Hartrich v. Hawes.

---

## Eugene Hartrich et al. v. George Hawes.

103    433
a202s 334

1. MASTER AND SERVANT—*When Knowledge of Defects in Machinery Will Not Preclude Servant from Bringing Action.*—A servant can recover for an injury suffered from defects due to the master's fault, of which he had notice, if under all the circumstances, a servant of ordinary prudence, acting with such prudence, would, under similar conditions, have continued the same work under the same risk, but not otherwise. All the circumstances must be taken into account, and not merely the isolated fact of risk.

2. SAME—*Neglect of Servant a Question of Fact.*—Negligence on the part of the servant, in such cases, does not necessarily arise from his knowledge of the defect, but is a question of fact to be determined from such knowledge and other circumstances in evidence.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Jasper County; the Hon. WILLIAM M. FARMER, Judge presiding. Heard in this court at the February term, 1902. Affirmed. Opinion filed September 11, 1902.

DAVIDSON & ISLEY, and I. D. SHAMHART, attorneys for appellants.

FITHIAN, KASSERMAN & FITHIAN and GIBSON & JOHNSON, attorneys for appellee.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

The judgment in this case might be affirmed for the failure of appellant to comply with rule 23, which requires that "a party bringing a cause into this court shall furnish a complete abstract or abridgment of the record thereof."

The pleadings are not abstracted at all, nor are the special findings asked by defendants presented in the abstract; nor the reasons filed for a new trial; nor the errors assigned on the record.

Appellants operated a large sawmill, employing fifteen to twenty hands. Appellee had been in their employ for two or three years as a common laborer or "roustabout," as he terms it, doing whatever he was ordered to do. At the time of his injury appellants were not at the mill. There is a conflict in the evidence as to whether, in the absence of appellants, there was any foreman, or employe authorized to give orders. If there was any such, it appears to have been one Sam Frauli. Appellee testifies, "Mr. Frauli was the foreman when they (the defendants) wasn't here; he was the head sawyer." Frank Bagwell testifies, "Guess Frauli was running the planer that day; neither of the defendants was there; guess Frauli was acting as foreman." Charles Sanger testifies, "Starks had authority to direct the hands. Frauli did for some time; if there was nobody else there and somebody had to, I suppose that he had authority." It appears that Starks was not there on the day of the accident. Appellants denied that Frauli had authority to act as foreman, but the evidence indicates that he had charge of affairs when the accident occurred.

Some of the machinery of the mill was below its floor. A part of it was shafting and a belt, thirty-six feet long, on pulleys, operating an elevator to clear away the saw dust as it accumulated. This belt was old, pieced, spliced, raveled and unsafe, and had been so for a considerable space of

time. There is ample evidence from the circumstances detailed, from which to infer that appellants knew, or ought to have known of its condition. Appellee also knew that it was pieced and spliced, but testifies that he did not know before the time of his injury, that it was so much raveled. It frequently slipped off the pulleys. When this occurred, some one would give notice by crying "Elevator," when it would be replaced, sometimes by one and sometimes by another employe. Appellee had replaced it at different times. Upon the day in question, the cry of "Elevator" was given and appellee went down to see what was the matter. He found the belt broken, and came back and reported to Frauli, who, with appellee, went down to mend it. As we understand from the evidence, the belt was off the pulleys and resting on the shaft, and when appellee brought two ends together and was holding them while Frauli was commencing to splice the ends, a raveling of the belt caught on the shaft, and the belt was started in motion, drawing both of appellee's hands around the shaft and so crushing them and his forearms, that both arms had to be amputated a few inches below the elbow. The trial resulted in a verdict and judgment against appellants for $1,250, from which they appealed.

Counsel for appellants say in their brief that they insist upon all the errors assigned, but further state that they will make no further reference to them except as involved in these four propositions: First, the court erred in not directing a verdict for the defendants. Second, the court erred in refusing to give the instructions as asked by appellants. Third, the court erred in giving instructions asked by appellee. Fourth, the court improperly admitted evidence in rebuttal which, if admissible at all, should have been offered and admitted in chief.

To the last of these propositions it is sufficient to say, that it is discretionary with the court to admit testimony for the plaintiff after the defendant has concluded his evidence, which should have been offered in chief. This discretion does not appear to have been abused in the present instance, and there was no error in its exercise.

There was evidence tending to sustain the verdict. It has so impressed two juries who have found for the plaintiff. There was no error, then, in refusing the peremptory instruction to find for defendants. The remaining two propositions may be considered together, as they involve the qualification of defendants' instructions that plaintiff could not recover if he knew the defective condition of the belt, so as to require also a knowledge of its risks or danger caused by the defect. We think that the modifications were proper. A servant may know that machinery is defective, and yet not know the danger or risk incurred in using such machinery. Such we understand to be the rule, and it is for the jury to determine from the evidence whether the person injured knew the danger and risk incurred. Counsel for appellants in their brief print parallel quotations from Swift & Co. v. O'Neill, 187 Ill. 343, and L. E. & W. R. R. Co. v. Wilson, 189 Ill. 98, and insist that these cases are inconsistent, and that the latter decision states the law correctly. It is said in Swift & Co. v. O'Neill, *supra*, citing other authorities :

" Hence, although he may know of the defects, yet unless, under all the facts and circumstances of the case, it can be said he knew of the extent of the danger, he may still maintain his action. That is to say, an employe may know of defects in such place or appliance and yet be justifiable in the belief that, by the exercise of proper care, no immediate danger from such defects will be incurred, and therefore his right of recovery not be defeated. ' The true rule, as nearly as it can be stated, is, that a servant can recover for an injury suffered from defects due to the master's fault, of which he had notice, if under all the circumstances, a servant of ordinary prudence, acting with such prudence, would under similar conditions have continued the same work under the same risk; but not otherwise. All the circumstances must be taken into account, and not merely the isolated fact of risk.' 1 Shearman & Redfield on Negligence, Sec. 211. ' Where the instrumentality with which a servant is required to perform a service is so glaringly defective that a man of common prudence would not use it, the master can not be held responsible for damages resulting from its use. But if a servant incurs the risk of machinery which, though dangerous, is not so much so as to

Hartrich v. Hawes.

threaten immediate injury, or where it is reasonable to suppose it may be safely used with great skill or care, mere knowledge of the defect on the servant's part will not defeat a recovery. Negligence on the part of the servant, in such cases, does not necessarily arise from his knowledge of the defect, but is a question of fact to be determined from such knowledge and other circumstances in evidence.' 5 Rapalje & Mack's Digest of Railway Law, Sec. 352, *et seq.*, p. 208. See Huhn v. Missouri Pacific Railway Company, 92 Mo. 440, and authorities there cited. It is also said in note 1 to Sec. 211 of Shearman & Redfield, *supra*, ' It is generally a question for the jury whether the surrounding circumstances made it contributory negligence for the servant to continue using the appliances.' "

An examination of the decision in L. E. & W. R. R. Co. v. Wilson, *supra*, will show that it does not deny the rule as stated in Swift & Company v. O'Neill, but states that " the rule prohibiting a recovery when the servant knows of the defect, which the master had not promised to remove, does not rest upon the ground of contributory negligence, but upon his contract under which he entered the service of defendant. In such a case it is not a question of negligence on the part of the servant but of the risk assumed by him."

In Swift & Co. v. O'Neill, the question whether a servant is barred from recovery " on the ground of assumed risk," is said to be " based upon the rule that one can not recover for an injury to the incurring of which he has contributed by his own negligence." The apparent inconsistency is not as to the rule itself, but as to the grounds upon which it is based. The statement of the rule in the Swift case is not inconsistent with the decision in the Wilson case, the only apparent inconsistency being in the statements of the basis of the rule where the servant can not recover.

In the case at bar, the question as to whether appellee, knowing that the belt was defective, knew the danger therefrom when it was not running, and in process of repair, was a question directly and peculiarly for the jury to answer. The defects in the belt made it liable to break. Appellee may have known this. But the breaking of the

belt was the indirect, not the direct cause of his injury. When appellee was holding the belt for Frauli to splice, it was not running. The jury may have believed that a common laborer, or " roustabout " did not appreciate the danger of a motionless, dismounted, broken belt, resting upon a shaft, being caught on the shaft by a raveling of the belt, and made dangerous in this way. If the danger was apparent, it is fair to presume that Frauli, the head sawyer, and to some extent, at least, in charge during the absence of appellants, and who was with appellee, would have stopped the engine while they were repairing the belt, as he did stop it immediately after appellee was caught. It was for the jury, under all these conditions, to say whether appellee knew the risk incurred, and whether the danger was so apparent that no man of ordinary prudence would have incurred it. Wierzbicky v. Ill. Steel Co., 94 Ill. App. 400; The William Graver Tank Works v. O'Donnell, 191 Ill. 236.

While the instructions for appellee which are criticised by counsel for appellants are in some respects open to criticism, we do not think that they show reversible error. The instructions as a series, presented the case fairly to the jury; and while it may be admitted that upon the facts it is a close case, we are not warranted in saying that the verdict is not supported by the evidence.

Judgment affirmed.